*FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re ) Case No.  17-22481-E-7
)
WILLIAM A. LANDES, )
)
Debtor. )
_____ )
)
JOHN REGER, ) Adv. Proc. No.  20-2130
) Docket Control No. MPD-1
Plaintiff, )
)
v. )
)
ESSEX BANK, )
)
Defendant. )
_____ )

## MEMORANDUM OPINION AND DECISION

John Reger ("Plaintiff-Trustee") filed the instant Adversary Proceeding on July 20, 2020, against Essex Bank ("Defendant").  Plaintiff-Trustee filed a Motion for Summary Judgment ("Motion") on August 11, 2020. Dckt. 12.  Defendant filed an Answer (Dckt. 54) and a Counterclaim (Dckt. 55) on January 11, 2021.  This case arises out of the Chapter 7 bankruptcy case commenced by William Landes (the "Debtor") in this court, bankruptcy case number 17-22481 (the "Related Bankruptcy Case").

The court has granted in part Defendant's prior Motion to Dismiss, with the Second and Fourth Causes of Action dismissed; and denied that prior motion in part as to the First Cause of Action (to determine the extent, validity, priority of lien of Defendant in the monies at issue in this Adversary Proceeding) and the Third Cause of Action (the Objection to Claim based on 11 U.S.C. § 502(d)).  Order, Dckt. 47.

As the court has addressed at hearings in this Adversary Proceeding and in the Related Bankruptcy Case, the Plaintiff-Trustee, Defendant, and their respective attorneys have been engaged in ever expanding (in time and expense) litigation over a diminishing "pot of money." At the hearing on this Motion, counsel for Defendant reported that all of the assets in which Defendant has asserted a lien pursuant to the Notice of Lien in Debtor's State Court Marital Dissolution Action[1] ("Dissolution Action") between the Debtor and his separated spouse, Marie Landes, now appeared to be of no or little recoverable value by Defendant. Though the lien created by the Notice of Lien was obtained within 90 days of the commencement of the Related Bankruptcy Case, the Plaintiff-Trustee elected not to seek to avoid it pursuant to 11 U.S.C. § 547. This lien created by the Notice of Lien was successfully used by Defendant to kill (discussed below) a sale of assets (artwork and guns) subject to such lien appears to now be of no value and not worth pursuing by Defendant.[2]

---

[1] *Marie S. Landes v. William Landes*, California Superior Court, County of Butte, Case No. FL040636. Notice of Lien, Exhibit 4; Dckt. 19.

[2] At the hearing on this Summary Judgment Motion, Defendant noted that the Debtor (who is now reported to not be legally competent) and his separated spouse have not diligently prosecuted the Dissolution Action which has been pending for now more than a decade. Defendant reports that given this lack of prosecution, it is not able to enforce its judgment lien against any and all property the Debtor has encumbered by the Notice of Lien in the Dissolution Action.

This court noted that whatever rights and interests the Debtor could have were property of the Bankruptcy Estate in the Related Bankruptcy Case, and that the Plaintiff-Trustee, the Chapter 7 Trustee in the Related Bankruptcy Case, was the person who could go in to enforce those rights since the Debtor chose to file bankruptcy. However, as is well known by all bankruptcy practitioners, for the Plaintiff-Trustee to spend time and money in asserting and enforcing such rights as property of the Bankruptcy Estate, it must be in the positive economic interests of the Bankruptcy Estate, and not merely provide free collection/judgment enforcement services to Defendant to recover Defendant's collateral.

The Parties made it clear to the Court that Defendant and the Plaintiff-Trustee could not advance any such discussions to achieve a mutually economic advantageous resolution. Thus, Defendant retains its asserted lien on assets of the Debtor in the Dissolution Action, which Defendant now concludes have $0.00 value because the Debtor and his separated spouse are not prosecuting the Dissolution Action. Because of this judgment lien pursuant to the Notice of Lien, the Plaintiff-Trustee cannot exercise the rights that are property of the Bankruptcy Estate to recovery property for the benefit of the Bankruptcy Estate (and correspondingly to the benefit of Defendant to the extent it retains a lien on a portion of the value of such property) because

The court grants summary judgment for Plaintiff-Trustee on the Third Cause of Action, disallowing Defendant's claim, Proof of Claim 4-2, as an unsecured claim in the Related Bankruptcy Case, pursuant to 11 U.S.C. § 502(d), Defendant having received an avoidable transfer of a judgment lien within 90 days of the commencement of this case as provided in 11 U.S.C. § 547(b), and Defendant not having conveyed the lien rights and interests to the Bankruptcy Estate.

The application of 11 U.S.C. § 502(d) to disallow Defendant's claim in the Related Bankruptcy Case and Defendant not to receive an unsecured claim distribution from unencumbered monies of the Estate appears to have caused some confusion. As discussed herein, and hopefully clarified, Defendant is disallowed a claim for payment of an unsecured claim in the Related Bankruptcy Case. Defendant has its lien, which was not avoided by the Plaintiff-Trustee, and is not terminated by the "mere" disallowance of Proof of Claim 4-2 pursuant to 11 U.S.C. § 506(d).

Thus, though Defendant has had its claim disallowed in the Related Bankruptcy Case, there remains the determination of the validity, priority, and extent of Defendant's lien in the property at issue - the monies received for the Bankruptcy Estate's interest in the non-exempt equity in two vehicles. That is the subject of the First Cause of Action in the Complaint in this Adversary Proceeding, for which summary judgment is not granted Plaintiff-Trustee.

## OVERVIEW OF MOTION AND
## APPARENT UNDERLYING FACTS NOT IN DISPUTE

Plaintiff-Trustee requests the court determine pursuant to the First Cause of Action, that Defendant has no security interest over the monies at issue. In the Third Cause of Action, Plaintiff-Trustee requests that the court sustain the Plaintiff-Trustee's objection to Defendant's proof of claim and disallow it as provided in 11 U.S.C. § 502(d). Dckt. 1.

The Debtor commenced his voluntary Chapter 7 bankruptcy case, the Related Bankruptcy Case, on April 14, 2017. Six years prior to that, in 2011, Marie Landes (Debtor's wife at the time) filed a petition for dissolution of marriage in the California Superior Court. No property division had occurred in the Dissolution Action prior to the commencement of the Related Bankruptcy Case.

---

Defendant steadfastly asserts its judgment lien that will consume all value in such assets.

At the February 4, 2021 hearing on this Motion, counsel for Defendant reported that there has not yet been any division of property in the Dissolution Action. Further, that Defendant has concluded that the assets in which Defendant asserts its judgment lien in the Dissolution Action, which are asserted to be substantially all assets of the Debtor, have no value worth pursing since the Debtor and his separated spouse are not diligently prosecuting the Dissolution Action. Given that the Dissolution Action having been "pending" fourteen years and because it is still pending, Defendant states that it has been blocked from enforcing its judgment and recovering any assets. It would be rank speculation as to when, if ever, the Debtor and his separated spouse would ever diligently prosecute the Dissolution Action to final judgment during Debtor's lifetime, and Defendant would be able to unilaterally enforce its lien rights.

**Monies at Issue in This Adversary Proceeding
in Which Defendant Asserts a Lien**

On April 26, 2017, Plaintiff-Trustee, as the Chapter 7 Trustee in Debtor's Related Bankruptcy Case, filed and served a "Notice of Intent to Sell Equity in Property" ("Notice of Intent"). A copy of the Notice of Intent is included as part of the 113-page exhibit document filed in support of the present Motion. Dckt. 19.

The Notice of Intent includes the following information (identified by paragraph number used in the Notice of Intent) relating to the property to be sold as relevant to this Adversary Proceeding:

> 3. DESCRIPTION OF PROPERTY TO BE SOLD: The property to be sold consists of the debtor(s) non-exempt equity in a 2009 Audi A 4 convertible, with 60,000 miles (exempted for $3,000.00) and a 1992 Lexus with 230,000 miles. Vehicles valued at $15,050.00 and $500.00 respectively.
>
> 4. TERMS AND CONDITIONS OF SALE: These properties are being sold as is, where is, subject to all existing liens and encumbrances and without any warranty or representations of any kind. There is no right of refund or return. The trustee has received an offer from the debtor to purchase these properties for $12,500.00, with a onetime payment of $12,500.00. Source of payment is a credit line.
> . . .
> 7. AMOUNT OF LIENS AND IDENTITY OF LIEN HOLDERS: Reger is not aware of any liens or lien holders against the property to be sold. All prospective purchasers should conduct their own independent investigation as to the nature and status of any liens and lien holders against the property to be sold.

8. IDENTITY OF PURCHASER AND RELATIONSHIP, IF ANY, TO ANY CREDITOR OR PARTY IN INTEREST: Reger has received an offer from the debtor to purchase the property for $12,500.00, with a onetime payment. Reger wishes to accept this offer. Upon expiration of the time to object and completion of the sale Reger will file a Report of Sale.

Exhibit 3; Dckt. 13. The Certificate of Service for the Notice of Intent includes Defendant, providing services as follows:

> Essex Bank
> 9954 Mayland Drive Suite 2100
> Richmond VA 23233-1482

Exhibit 4; *Id*.

On May 18, 2017, Plaintiff-Trustee filed his Report of Sale, which states that the sale "to allow the Debtor(s) to buy back the equity in his 2009 Audi and a 1992 Lexus for $12,500.00" had been consummated. Exhibit 7; *Id*. [3] The Complaint states that an additional $500.00 from two of Debtor's bank accounts were turned over to the Plaintiff-Trustee. There has been no assertion that Defendant notified the Plaintiff-Trustee of any objection it had to the sale or that it notified the Plaintiff-Trustee that it had a lien on the vehicles that were the subject of the sale. The $13,000.00 is identified as the "Funds in Dispute," with the rights and interests of the Parties to be determined in the First Cause of Action in the Complaint.

**Proofs of Claim Filed by Defendant**
**In Debtor's Related Bankruptcy Case**

On July 17, 2017, Defendant filed a Proof of Claim #4-1 in Debtor's Related Bankruptcy Case. A copy of Proof of Claim 4-1 is filed as Exhibit 15 in support of the Motion. *Id*. The July 17, 2017 filing of Proof of Claim 4-1 was three months after the April 26, 2017, filing and service of the Notice of Sale, and two months after the May 18, 2017, filing of the Plaintiff-Trustee's Report of Sale.

The information and documentation provided in and with Proof of Claim 4-1 is summarized as follows:

---

[3] The Plaintiff-Trustee, in *pro se*, elected to use a Notice of Intent to Sell procedure pursuant to Federal Rule of Bankruptcy Procedure 6004(a) rather than a noticed hearing and obtaining an order of the court.

A.      The amount of the claims is $857,159.86.

B.      The Basis of the Claim is stated to be:

      1.      September 22, 2015 Judgment

            a.      Attached to the Proof of Claim as Exhibit 1 is a copy of a judgment from the Superior Court for the County of Butte in favor of Defendant and against JSB, LLC and Debtor in the amount of $739,994.08 ("Essex Judgment").

      2.      Abstract of Judgment

            a.      Attached to the Proof of Claim as Exhibit 2 is an Abstract of Judgment for the Essex Judgment, which in the upper right hand corner has information stating that it was recorded in Butte County, California on January 31, 2017.

      3.      Form JL-1

            a.      Attached to the Proof of Claim as Exhibit 3 is Notice of Judgment Lien (Form JL-1) for the Essex Judgment, which in the upper right hand corner has information stating that it was filed with the California Secretary of State on January 3, 2017.

                 (1)      The name of the judgment debtor listed on the JL-1 is William Landes, who is the Chapter 7 Debtor in Related Bankruptcy Case, and JSB, LLC.

C.      Security for the Claim is stated to be:

      1.      Real Property (Defendant checking the box and does not identify what real property)

      2.      "Personal Property" (not identified)

      3.      With perfection of lien by recorded Abstract of Judgment and filed Form JL-1.

As discussed below, the above judgment liens do not create a lien on vehicles.  Proof of Claim 4-1 did not include the Notice of Lien as a basis for Defendant having encumbered Debtor's property.

On December 29, 2018, which is seventeen (17) months after Proof of Claim 4-1 was filed and nineteen (19) months after the Plaintiff-Trustee filed his Report of Sale having been consummated,[4] Defendant filed Amended Proof of Claim 4-2, which is filed as Exhibit 16.  *Id.*  The Amended Proof of Claim includes the same information as in Proof of Claim No. 4-1, with the

---

[4] 17-22481; Report of Sale, Dckt. 15.

following additions or changes relating to the judgment lien(s) being asserted as relevant to the

Motion now before the court:

> A.  For the basis of claim (Part 2, § 8 of Proof of Claim 4-2), "Notice of Lien" has been added.

> B.  For the identification of security for the claim (Part 2, § 9 of Proof of Claim 4-2), "Ntc of Lien" and "[See attached Summary and Exhibits 1, 2, 3, and 4]" have been added.

> C.  In the Proof of Claim Summary, page 4 of Exhibit 16, the following additional summary information has been added:

>> A Notice of Lien regarding the 9/22/15 Judgment from the Butte County Superior Court civil case was filed in the Butte County Superior Court family law case regarding the pending divorce of William Landes and Marie Landes [Exhibit 4] and served on counsel for both of those parties, thereby creating a lien on everything involved in that case and preventing any actions involving William and Marie Landes about their property without either a court order from that Superior Court or the written approval of Essex Bank.

>> The Notice of Lien attached as Exhibit 4 affects the community personal property (guns, artwork, etc.) that William Landes and the Chapter 7 trustee proposed to sell to Marie Landes. That personal property was community property of William Landes and Marie Landes subject to the claims and liens and rights of Essex Bank. Essex Bank claims a right to 100% of the proceeds of that "sale". That "sale" is a sham sale between a husband and a wife of community property through a bankruptcy trustee where the purpose was to enrich William Landes, enrich Marie Landes, enrich the trustee, and enrich the trustee's attorney to the detriment of Essex Bank.[5]

> D.  Added as Exhibit 4 to Proof of Claim No. 4-2 is a Notice of Lien for the Essex Judgment filed on February 14, 2017, in the Dissolution Action in Butte County. *Id.*

**Motion to Sell Property in the Related Bankruptcy Case and**
**Bankruptcy Appellate Panel Final Decision Determining**
**Defendant Obtained a Lien on Debtor's Property**
**by Filing a Notice of Lien in the Dissolution Action**

In the Related Bankruptcy Case, the Plaintiff-Trustee filed a Motion to Sell property of the

bankruptcy estate identified as artwork and firearms for $20,000.00 to Marie Landes, the spouse of

---

[5] The editorial comment added to Proof of Claim 4-2 concerning a "sham sale" and the Plaintiff-Trustee and counsel seeking to enrich themselves to the detriment of Defendant gives a flavor of the antipathy of Defendant to the Plaintiff-Trustee and the heightened animus between these Parties in this Adversary Proceeding and the Related Bankruptcy Case.

Debtor who commenced the 2011 Dissolution Action.  The bankruptcy judge to whom the Related

Bankruptcy Case was then assigned ("Bankruptcy Judge M.") entered an order approving the sale

pursuant to 11 U.S.C. § 363(b), and not purport to order the sale of any property free and clear of

the lien(s) asserted by Defendant.  17-22481; Motion and Order, Dckts. 63, 76.

Thus, though Bankruptcy Judge M. issued an order authorizing the Plaintiff-Trustee to sell

the artwork and firearms, such order did not impair or assert Defendant's lien rights under applicable

California Law[6] and the Bankruptcy Code[7] since it was not ordered free and clear of the lien

pursuant to 11 U.S.C. § 363(f) asserted by Defendant.  17-22481; Order, Dckt. 76.

Defendant appealed that Order and successfully had the Bankruptcy Appellate Panel confirm

that Bankruptcy Judge M's *dicta* about not thinking that Defendant had a lien was mistaken.

Defendant went further and had the Bankruptcy Appellate Panel vacate Bankruptcy Judge M's order

authorizing the sale (subject to liens) pursuant to 11 U.S.C. § 363(b) and terminating the Plaintiff-

Trustee's authorization to sell the artwork and guns.  *Essex Bank v. Reger (In re Landes)*, 2019

Bankr. LEXIS 3943 (B.A.P. 9th Cir. 2019) ("Bankruptcy Appellate Panel Decision");  Copy filed

as Exhibit 13, Dckt. 19.

No further order was issued in the Related Bankruptcy Case authorizing any sale of the

artwork and firearms, or any part thereof by the Plaintiff-Trustee.

**Bankruptcy Appellate Panel Determination**

In reversing Bankruptcy Judge M's order authorizing the sale of the artwork and guns

pursuant to 11 U.S.C. § 363(b), the Bankruptcy Appellate Panel addressed Defendant's assertion

of having liens on personal property of the Debtor.  The Bankruptcy Appellate Panel Decision,

which is now final as between Plaintiff-Trustee and Defendant, includes the following:

> We also agree with the bankruptcy court that **the JL-1 did not create a lien on the guns and artwork**. In California, a JL-1 lien is similar to a UCC-1 lien and provides a judgment lien on a variety of personal property. See CCP § 697.530.5 Essex Bank argued at the sale hearing that the buy/sell agreement
> constituted an "accounts receivable" to William, which was covered by its JL-1 lien.

---

[6] California Commercial Code §§ 9101 et. seq.

[7]  11 U.S.C. § 552.

The court disagreed, finding that the **postpetition contract between Trustee on behalf of the bankruptcy estate and Marie was not a contract or receivable of William. And even if it was, the JL-1 lien did not encumber postpetition assets.** § 552(a).

However, we disagree with the bankruptcy court's ruling that the Notice of Lien did not create a lien on the guns and artwork and that Essex Bank was a general unsecured creditor and not entitled to any of the sale proceeds. . .

If a judgment creditor has a money judgment against a judgment debtor who is a party to a pending action or special proceeding, the creditor **may acquire a lien to the extent necessary to satisfy the judgment on (a) any cause of action of the debtor for money or property that is the subject of the action or proceeding, and (b) the rights of the debtor to money or property under any judgment subsequently procured in the action or proceeding.** CCP § 708.410(a); 8 Witkin, Cal. Proc., Enforcement of Judgment § 297 (5th ed. 2008). The judgment debtor can be the plaintiff or the defendant. *Fleet Credit Corp. v. TML Bus. Sales, Inc.*, 65 F.3d 119, 121 (9th Cir. 1995). An action or proceeding remains "pending" until the time for appeal expires or an appeal is finally determined. CCP § 708.410(d).

To obtain this type of lien, the judgment creditor files in the pending action or proceeding a notice of lien and an abstract or certified copy of the judgment creditor's money judgment. CCP § 708.410(b). The judgment creditor must also serve a copy of the filed notice of lien on all of the parties to the "action or special proceeding. . . " CCP § 708.410(a). The notice of lien must contain certain language, which serves as a notice to the judgment debtor of his or her rights. CCP § 708.420.
. . .

It is undisputed, and the record establishes, that **Essex Bank did everything required to obtain and perfect a lien under CCP § 708.410.** It filed the Notice of Lien, which contained the necessary language under CCP § 708.420, and a copy of the Abstract of Judgment **in the Divorce Case**. It also served the Notice of Lien on the parties to the Divorce Case, including Marie and her divorce counsel. No one has asserted that William sought or obtained an exemption from the lien in accordance with CCP § 708.450.7 Thus, the lien appears to be *prima facie* valid.
. . .

While a marital dissolution proceeding might not seem like a "cause of action" that would fall under the statute, California courts have ruled that CCP § 708.410 liens do apply in such proceedings. *See In re Marriage of Katz*, 234 Cal. App. 3d 1711, 1719-21 (1991) (ruling that CCP § 708.410 liens and the associated remedies apply in marital dissolution proceedings and that wife's transfer to husband of more than one-half of community property interest during dissolution proceeding gave rise to liability to judgment creditor under CCP § 708.470(c)); *In re Marriage of Kerr*, 185 Cal. App. 3d. 130 (1986) (applying CCP § 708.410 in marital dissolution).

The bankruptcy court erred, and thus abused its discretion, in ruling as a matter of law that Essex Bank did not have a CCP § 708.410 lien on the guns and artwork simply because the Notice of Lien was filed in a marital dissolution proceeding. Accordingly, we must REVERSE the Sale Order.

*Essex Bank v. Reger et al*, 2019 Bankr. LEXIS 3943, [*15] (B.A.P. 9th 2019).

As discussed above, though Bankruptcy Judge M did not order the sale to be free and clear

of any lien asserted by Defendant pursuant to 11 U.S.C. § 363(f), the Defendant not only appropriately got the Bankruptcy Appellate Panel to "correct" the bankruptcy judge's *dicta* about whether he thought a lien existed to avoid any confusion about that being a finding between these parties, but Defendant had the Bankruptcy Appellate Panel reverse the sale order – thereby causing there to be no order pursuant to 11 U.S.C. § 363 authorizing the sale of the artwork and guns by the Plaintiff-Trustee.

When the matter was returned to the Bankruptcy Court, the sale "fell through." The Plaintiff-Trustee did not seek an order authorizing a sale, resulting in there being no $20,000.00 of "sales proceeds" for Defendant to assert a lien against. The Plaintiff-Trustee returned the $20,000.00 to the potential purchaser, the Plaintiff-Trustee not having an order authorizing the sale of the artwork and guns to such potential purchaser.

As part of Defendant successfully having the sale order vacated, killing the sale of the artwork and guns, and there being no proceeds of a sale, Defendant also successfully obtained a now final ruling between these parties that Defendant has a judgment lien created by the filing of the Notice of Lien in the Dissolution Action on February 14, 2017[8] (discussed further below) which is 59 days before the April 14, 2017 commencement of Debtor's Related Bankruptcy Case.

In the Supplemental Points and Authorities and then at oral argument, Defendant and Defendant's counsel seek to argue that the Notice of Lien did not "really" transfer anything to Defendant, but it was merely a "marker" which was of effect when the Dissolution Action was concluded. This assertion is contrary to the final Decision of the Bankruptcy Appellate Panel reversing Bankruptcy Judge M's order granting the Motion to Sell, which Bankruptcy Appellate Panel Decision includes (and the court repeats from above):

> However, **we disagree with** the bankruptcy court's **ruling** that **the Notice of Lien did not create a lien** on the guns and artwork . . .
> . . .
> It is undisputed, and the record establishes, that **Essex Bank** did everything required to **obtain and perfect a lien** under CCP § 708.410. . .Thus, **the lien appears to be** *prima facie* **valid** . . .

---

[8] A February 14, 2017 file stamped copy of the Notice of Lien filed in the Dissolution Action is included by Defendant as a Exhibit 4 Proof of Claim 4-2. Exhibit 15; Dckt. 19.

. . .

The **bankruptcy court erred**, and thus abused its discretion, in ruling as a matter of law **that Essex Bank did not have a CCP § 708.410** lien on the guns and artwork simply because the Notice of Lien was filed in a marital dissolution proceeding. Accordingly, **we** must **REVERSE** the Sale Order.

*Essex Bank v. Reger et al*, 2019 Bankr. LEXIS at [*15].

The creation of the lien pursuant to the Notice of Lien in the Dissolution Action has been determined in favor of Defendant by the final decision of the Bankruptcy Appellate Panel. As discussed below, this lien constituted a transfer of interests in all of Debtor's assets that were subject to the Dissolution Action, which lien put Defendant ahead of all other creditors of Debtor. The creation of such a lien is a "transfer" as defined under the Bankruptcy Code that is subject to the avoiding powers, including 11 U.S.C. § 544, § 547, and § 548.

### GROUNDS, INTERESTS, AND OPPOSITIONS ASSERTED BY PLAINTIFF-TRUSTEE AND DEFENDANT

In light of there being further proceedings under the First Cause of Action to determine the lien rights and interests of Defendant in the $13,000.00, the court provides a detailed review of the positions, authorities, and arguments advanced by both the Plaintiff-Trustee and Defendant. Such may be of assistance to all in connection with further hearings and trial in this Adversary Proceeding.

**Review of Plaintiff-Trustee's Grounds, Authorities, and Arguments in Support of Summary Judgment**

Plaintiff-Trustee begins first with the assertion that an Abstract of Judgment lien attaches only to real property, citing to California Code of Civil Procedure § 697.310(a). Therefore, since the monies at issue are not related to any real property interest, there cannot be a lien pursuant to the Abstract of Judgment.

Going to the JL-1 Lien filed with the Secretary of State, the Plaintiff-Trustee cites to California Code of Civil Procedure § 697.530(a) to identify the personal property that is subject to a JL-1 Lien. Included in the list of items is "accounts receivable," which is what Defendant asserts the monies paid to the Plaintiff-Trustee were. Neither the Plaintiff-Trustee nor Defendant provide the court with what constitutes, legally, an "account receivable" for purposes of the JL-1 Lien.

11

1    Plaintiff-Trustee then addresses the Notice of Lien asserted to have been created within 90

2    days of the filing of the Related Bankruptcy Case pursuant to California Code of Civil Procedure

3    § 708.5410.  The Plaintiff-Trustee argues that the monies paid to Plaintiff-Trustee by the Landes

4    Medical Group, the Debtor's medical corporation, are not monies subject to the Notice of Lien since

5    they are not "rights to money or property under a judgment" obtained in the Dissolution Action.

6    Then, the Plaintiff-Trustee asserts that the Bankruptcy Appellate Panel did not determine that

7    a lien exists on the $13,000.00 in monies received for the sale of the non-exempt interest in the

8    vehicles.  While it is true that the $13,000.00 was not at issue on that appeal, as between Defendant

9    and the Plaintiff-Trustee it has been adjudicated that a lien was created on various assets by the

10   filing of the Notice of Lien in the Dissolution Action on the eve of Debtor filing bankruptcy.

11   The Plaintiff-Trustee further asserts that California Code of Civil Procedure § 708.410 does

12   not state that the lien created by the Notice of Lien applies to proceeds from the sale of property

13   subject to such a lien.

14   With respect to the two vehicles and the asserted liens, the Plaintiff-Trustee cites to

15   California Code of Civil Procedure § 697.530(d), which is the basis for the JL-1 Lien, which

16   specifies the personal property subject to a judgment lien.  Within this section is a specific exclusion

17   from a judgment lien – vehicles:

18   § 697.530. Property subject to judgment lien

19   (a) A **judgment lien on personal property** is a lien on all interests in the following
20   personal property that are **subject to enforcement of the money judgment against
     the judgment debtor pursuant to Article 1** (commencing with Section 695.010)
21   of Chapter 1 at the time when the lien is created if the personal property is, at that
     time, any of the following:

22   (1) Accounts receivable, and the judgment debtor is located in this state.

23   (2) Tangible chattel paper, as defined in paragraph (79) of subdivision (a) of
24   Section 9102 of the Commercial Code, and the judgment debtor is located in
     this state.

25   (3) Equipment, located within this state.

26   (4) Farm products, located within this state.

27   (5) Inventory, located within this state.

28   (6) Negotiable documents of title, located within this state.

12

(d) Notwithstanding any other provision of this section, **the judgment lien does not attach to**:

(1) A **vehicle** or vessel required to be registered with the Department of Motor Vehicles or a mobilehome or commercial coach required to be registered pursuant to the Health and Safety Code.

Cal. C.C.P. § 697.530.  Included within Article 1 referenced in § 697.530(a) above is the JL-1 lien pursuant to California Code of Civil Procedure § 697.550 and this applies to the judgment lien created by the JL-1 filing with the Secretary of State.  The Plaintiff-Trustee does not provide the legal tie in from Chapter 2 Liens, Article 1 for liens on real and personal property of the California Code of Civil Procedure to Chapter 6 Miscellaneous Remedies, Article 5 for liens created by the filing of the Notice of Lien in the Dissolution Action.

The Plaintiff-Trustee cites the court to established Ninth Circuit law that the expiration of the time allowed in 11 U.S.C. § 546(a) to bring an action to avoid a preferential transfer does not waive or make the provisions of 11 U.S.C. § 502(d) ineffective or unenforceable.  In *In re America West Airlines, Inc.,* 217 F.3d 1161, 1163 (9th Cir. 2000), the Ninth Circuit Court of Appeals determined no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable.  Plaintiff-Trustee asserts that even if Plaintiff-Trustee failed to bring an action to disallow the Notice of Lien under § 502(d) within the two-year statute of limitations, the Notice of Lien is an avoidable transfer pursuant to § 547(b) subject to disallowance.  The Notice of Lien in the Dissolution Action was filed on February 14, 2017, 60 days prior to the filing of the bankruptcy, which was filed on April 14, 2017.

**Supplemental Pleadings
by Plaintiff-Trustee**

The court afforded both the Plaintiff-Trustee and Defendant to file supplemental points and authorities after the initial hearing on this Motion.  Plaintiff filed the Supplemental Memorandum of Points and Authorities on December 30, 2020.  Dckt. 52.  In it, Plaintiff-Trustee asserts that summary judgment should be entered in his favor because the evidence shows that by filing the Notice of Lien in the Dissolution Action, Defendant created a transfer and the Notice of Lien is a

13

lien for purposes of the Bankruptcy Code. Plaintiff-Trustee further asserts that this transfer is subject to avoidance because pursuant to 11 U.S..C. § 547 the Notice of Lien was filed for the benefit of Defendant to recover an antecedent debt, while Debtor was insolvent and within 90 days of the filing. Plaintiff-Trustee also asserts that Defendant has asserted no potential defense to disallowance of its claim because Defendant has not "relinquished" the preferential transfer. Plaintiff-Trustee points the court to *El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.*), 217 F.3d 1161, 1165-66 (9th Cir. 2000), holding that the court shall disallow a claim pursuant to 11 U.S.C. § 502(d) unless the transfer that could have been avoided is relinquished (such as releasing the lien or transferring it to the bankruptcy trustee as would have happened if it was avoided, *see* 11 U.S.C. § 551).

**Defendant's Opposition and**
**Basis For Asserted Lien on the $13,000.00**

Defendant has successfully asserted that it has a blanket lien on all assets of the Debtor and Marie Landes and an additional personal property lien pursuant to a JL-1 filed with the California Secretary of State. Defendant asserts that it has a lien on the $13,000.00 of proceeds from the sale by the Plaintiff-Trustee of the non-exempt equity in the two vehicles to the Debtor.

From the thirty pages of points and authorities provided by Defendant, the court distills the following legal basis asserted by Defendant for having such a lien. First, based on the JL-1 filed lien with the Secretary of State, that lien has attached to the $13,000.00 paid to the Plaintiff-Trustee. It is asserted that the JL-1 Lien includes any accounts receivable that were owed to Debtor. As discussed below, Defendant asserts that the $13,000.00 paid to the Plaintiff-Trustee by a check issued by Landes Medical Group (the Debtor's professional medial corporation) necessarily had to be an accounts receivable that was owed by the Medical Group to the Debtor that was subject to the JL-1 Lien.

Defendant states that this JL-1 Lien was filed with the Secretary of State, and thereby perfected, 101 days before Debtor filed his Related Bankruptcy Case (thus, outside of the 90-day non-insider preference period).

Second, Defendant asserts that the Notice of Lien filed in the dissolution proceeding has

attached to the $13,000.00. Defendant cites to the Bankruptcy Appellate Panel Decision stating that such lien was created by the filing of the Notice of Lien in the Dissolution Action. As discussed above, this lien was created, and the transfer made thereby, within the 90-day preference period.

Third, Defendant argues that since the Plaintiff-Trustee's Notice of Intent states that "These properties are being sold as is, where is, subject to all existing liens and encumbrances," it means that Defendant has the lien it asserts in the monies received by the Plaintiff-Trustee - no ifs, ands, or buts to be asserted by the Trustee. By stating that, the Plaintiff-Trustee is barred from asserting that Defendant has no lien on the $13,000.00 held by the Plaintiff-Trustee from the sale of the non-exempt equity to Debtor. In substance, Defendant appears to assert that by issuing the Notice of Intent, the Plaintiff-Trustee created an indisputable lien in favor of Defendant without the need for any court authorization. *See* the requirements of 11 U.S.C. § 364(c) for the creation of a lien by a trustee.

Fourth, Defendant argues that the Plaintiff-Trustee waived the mandate imposed by Congress in 11 U.S.C. § 502(d) for the disallowance of a claim by virtue of the language used in the Notice of Intent to Sell. This appears to be an argument that the Plaintiff-Trustee had the power to create an extra-statutorily authorized lien on the monies received by saying that property sold was subject to any liens and encumbrances that existed on such property sold.

Defendant also asserts (after having received Plaintiff-Trustee's Points and Authorities citing to controlling Ninth Circuit law to the contrary stated in *In re America West Airlines, Inc.*) that because the deadline to file an action to avoid the transfer created by filing the Notice of Lien in the Dissolution Action on the eve of Debtor's bankruptcy filing has expired, the disallowance of the claim pursuant to 11 U.S.C. § 502(d) is time barred.

These positions are asserted long on argument and short on legal authorities and evidence. Defendant asserts a number of "it must be" because "then Defendant wins," as opposed to evidence and law as to establish the correct legal decision.

**Supplemental Points and Authorities**
**Filed by Defendant**

Defendant counters with its Supplemental Memorandum of Points and Authorities filed on

1   January 21, 2021. Dckt. 57. Among other things, Defendant continues to argue that *res judicata* bars

2   Plaintiff-Trustee from relitigating the issues on the basis that the Bankruptcy Appellate Panel

3   Decision in now a final decision. This court notes that the Bankruptcy Appellate Panel Decision

4   includes determining that Defendant obtained a lien on some assets of the Debtor in the Dissolution

5   Action by the filing of the Notice of Lien. This is the lien, which is part of what Defendant asserts

6   is a *res judicata* Bankruptcy Appellate Panel Decision, which Defendant successfully asserted to kill

7   the sale of the artwork and guns by the Plaintiff-Trustee in the Related Bankruptcy Case. Now,

8   Defendant  seeks to assert that the Bankruptcy Appellate Panel Decision is not really *res judicata*

9   for some determinations (when such determinations are not advantageous for Defendant in this

10  Adversary Proceeding). Specifically, Defendant asserts that the determination that Defendant

11  obtained a lien on assets of Debtor by filing a Notice of Lien the Dissolution Action is not *res*

12  *judicata* between these Parties.[9]

13       Moreover, Defendant argues that the monies at issue are accounts receivable owed to Debtor

14  by his medical corporation and therefore subject to the JL-1 filed with the California Department

15  of State and perfected 101 days before the Related Bankruptcy Case was filed, which is not subject

16  to avoidance. While arguing that the funds were accounts receivable, Defendant does not provide

17  evidence showing that the funds are accounts receivable. Instead, Defendant contends that because

18  there are factual disputes as to whether the funds held by Plaintiff-Trustee are accounts receivable,

19  the motion should be denied because there is a triable issue about those material facts.

20       Defendant does not present the court with any legal authorities for a proposition that since

21  it had a lien on some limited assets pursuant to the JL-1, the provisions of 11 U.S.C. § 502(d) do not

22  apply to the Notice of Lien in which Defendant asserts to have acquired a lien on all assets of Debtor

23  that are subject to the Dissolution Action within 90 days of Debtor filing the Related Bankruptcy

24  Case.

25

26       [9] As discussed below, while the Bankruptcy Appellate Panel Decision determined that

27  Defendant obtained a lien in assets of Debtor in the Dissolution Action within 90 days of the
    commencement of the Bankruptcy Case, the Bankruptcy Appellate Panel Decision does not

28  determine whether Defendant has a lien on the $13,000.00 at issue in this Adversary Proceeding.

Lastly, Defendant argues that the Notice of Lien, which created a lien on assets of Debtor in the Dissolution Action, was not Defendant actually levying or executing on the property encumbered by the lien(s). Therefore, there is nothing for Defendant to pay or turn over to Trustee, thus, 11 U.S.C. § 502(d) cannot apply. In making this argument, Defendant ignores that obtaining a lien in property of the Debtor is a transfer, which transfer (lien rights) can be avoided or turned over to the Plaintiff-Trustee to save Defendant from having its claim disallowed pursuant to 11 U.S.C. § 502(d).

## APPLICABLE LAW FOR A MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO CLAIM

In an adversary proceeding, summary judgment is proper when "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.11[1][b] (3d ed. 2000). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza )*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

In response to a sufficiently supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial.

*Barboza*, 545 F.3d at 707, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The nonmoving party cannot rely on allegations or denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that a dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a summary judgment motion, the court must view all of the evidence in the light most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing *County. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage [,] the judge's function is not himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

For an objection to claim, Section 502(a) provides that a claim supported by a Proof of Claim is allowed unless a party in interest objects. Once an objection has been filed, the court may determine the amount of the claim after a noticed hearing. 11 U.S.C. § 502(b).

It is settled law in the Ninth Circuit that the party objecting to a proof of claim has the burden of presenting substantial factual basis to overcome the prima facie validity of a proof of claim and the evidence must be of probative force equal to that of the creditor's proof of claim. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *see also United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and requires financial information and factual arguments. *In re Austin,* 583 B.R. 480, 483 (B.A.P. 8th Cir. 2018). Notwithstanding the prima facie validity of a proof of claim, the ultimate burden of persuasion is always on the claimant. *In re Holm*, 931 F.2d at p. 623.

**DISCUSSION**
**AND**
**APPLICATION OF APPLICABLE LAW**

The court begins with the Circuit Court of Appeals decision cited by Plaintiff-Trustee, *El*

*Paso v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 217 F.3d 1161 (9th Cir.

2000). In that case, the Ninth Circuit concluded that the 11 U.S.C. § 502(d) applied to a lien which

was the basis of the City of El Paso's Proof of Claim filed in debtor airline's bankruptcy case for

personal property taxes for the prior tax year. The court held that the lien created a transfer that was

avoidable under 11 U.S.C. § 545, and thus the debtor airline was entitled to invoke 11 U.S.C.

§ 502(d) to object to the claim and the bankruptcy court could disallow the claim. *Id.*, at 1168. The

11 U.S.C. § 502(d) disallowance applied even if the trustee had not sought to avoid the lien and the

time period to do so had expired. *Id.*, at 1168-1169.

The application of 11 U.S.C. § 502(d) is addressed in detail in COLLIER ON BANKRUPTCY,

which discussion includes:

> [a] Avoidable Claims and Avoided Claims
>
> Most courts to consider the issue have concluded that there is no prohibition against the trustee's asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable. [11] These courts based their holdings on several observations about section 502(d). First, the wording of section 502(d) refers to transfers "avoidable" under various sections and not to claims that have been avoided. Arguably, an avoidable transfer is one that meets the statutory requirement for avoidance despite a potential time-bar defense. Second, the purpose of section 502(d) is to promote the pro-rata sharing of the bankruptcy estate among all creditors as well as the coercion of the payment of judgments obtained by the trustee. [12] Creditors who have received avoidable transfers to the detriment of the pool should not be entitled to make additional demands on the assets of the estate. [13] The logic of cases permitting invocation of section 502(d) even when the trustee's avoidance claims are time-barred likely would not apply to claims that are outside a statute of repose treated under state law as an essential element of the cause of action.
>
> [11] *See, e.g., El Paso v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 217 F.3d 1161, 44 C.B.C.2d 485 (9th Cir. 2000); *In re KF Dairies, Inc.*, 143 B.R. 734 (B.A.P. 9th Cir. 1992); *In re Stoecker*, 143 B.R. 118 (Bankr. N.D. Ill.); *In re Mid Atlantic Fund, Inc.*, 14 C.B.C.2d 1435, 60 B.R. 604 (Bankr. S.D.N.Y. 1986); *see also In re Larry's Marineland of Richmond, Inc.*, 166 B.R. 871 (Bankr. E.D. Ky. 1993) (inability of trustee to obtain affirmative monetary recovery does not prevent operation of section 502(d)). A minority of courts have found that a preference claim cannot serve as a basis for denying a claim under section 502(d) if the cause of action is untimely or not yet prosecuted. *See In re Marketing Assocs. of Am., Inc.*, 122 B.R. 367 (Bankr. E.D. Mo. 1991); *In re Marketing Resources Int'l Corp.*, 35 B.R. 353 (Bankr. E.D. Pa. 1984).
>
> [12] *In re Davis*, 889 F.2d 658, 661, 22 C.B.C.2d 285 (5th Cir. 1989), cert. denied, 495 U.S. 933, 110 S. Ct. 2175, 109 L. Ed. 2d 504 (1990) (policy behind section 502(d) illustrates that the section is intended to have the coercive effect of ensuring compliance with judicial orders).

[13] *In re Mid Atlantic Fund, Inc.*, 14 C.B.C.2d 1435, 60 B.R. 604 (Bankr. S.D.N.Y. 1986).

4 Collier on Bankruptcy, P 502.05 (16th 2020).

As discussed in the last paragraph from Collier above, a creditor who has received a voidable transfer to the detriment of other creditors (it not being avoided by the trustee) is not entitled to make additional demands on the assets of the estate - i.e. share in the unencumbered monies to the extent such creditor has a claim in excess of what would have been the avoidable transfer.  But the disallowance of the claim does not undo the transfer.

**Notice of Lien and its Effects
in the Dissolution Action**

Defendant's lien in Debtor's personal property within 90 days of the commencement of the Related Bankruptcy Case pursuant to the Notice of Lien filed in the Dissolution Action is based on California Code of Civil Procedure § 708.410, which at the date of the bankruptcy filing provided in pertinent part:

> (a) A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien under this article, to the extent required to satisfy the judgment creditor's money judgment, **on both of the following**:
>
> (1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding.
>
> (2) **The rights of such judgment debtor to money or property** under any judgment subsequently procured in the action or proceedings.

California Code of Civil Procedure § 708.410 (emphasis added).  Thus, by the plain language of this statute, upon filing of the notice of lien Defendant obtained a lien not only on the cause of action, but also all "money or property" that Debtor would procure in the action.

In the now final Bankruptcy Appellate Panel Decision between the Parties, the Bankruptcy Appellate Panel provided an explanation as to how Defendant obtained its lien pursuant to the Notice of Lien filed in the Dissolution Action within 90 days of the commencement of the Related Bankruptcy Case:

If a judgment creditor has a money judgment against a judgment debtor who is a

party to a pending action or special proceeding, the **creditor may acquire a lien to the extent necessary to satisfy the judgment on (a) any cause of action of the debtor for money or property that is the subject of the action or proceeding, and (b) the rights of the debtor to money or property under any judgment subsequently procured in the action or proceeding**. CCP § 708.410(a); 8 Witkin, Cal. Proc., Enforcement of Judgment § 297 (5th ed. 2008). The judgment debtor can be the plaintiff or the defendant. *Fleet Credit Corp. v. TML Bus. Sales, Inc.*, 65 F.3d 119, 121 (9th Cir. 1995). An action or proceeding remains "pending" until the time for appeal expires or an appeal is finally determined. CCP § 708.410(d).

**To obtain this type of lien, the judgment creditor files in the pending action or proceeding a notice of lien and an abstract or certified copy of the judgment creditor's money judgment**. CCP § 708.410(b). The judgment creditor must also serve a copy of the filed notice of lien on all of the parties to the "action or special proceeding. . . . " CCP § 708.410(a). The notice of lien must contain certain language, which serves as a notice to the judgment debtor of his or her rights. CCP § 708.420.

. . .

**It is undisputed, and the record establishes, that Essex Bank did everything required to obtain and perfect a lien under CCP § 708.410.** It filed the Notice of Lien, which contained the necessary language under CCP § 708.420, and a copy of the Abstract of Judgment in the Divorce Case. It also served the Notice of Lien on the parties to the Divorce Case, including Marie and her divorce counsel. No one has asserted that William sought or obtained an exemption from the lien in accordance with CCP § 708.450.7 Thus, the lien appears to be *prima facie* valid.

*Essex Bank v. Reger (In re Landes)*, 2019 Bankr. LEXIS 3943, at [*15] -[*17].

Defendant established its lien on the personal property that the Trustee was attempting to sell (the guns and artwork), which was obtained within 90 days of the commencement of the Related Bankruptcy Case, and Defendant used that unavoided lien to kill the sale of the artwork and guns by the Plaintiff-Trustee.

**Undisputed Facts Relating to the Application of**
**11 U.S.C. § 502(d) on the Notice of Lien**

Section 502(d) provides for the disallowance of a claim of any entity that is a transferee of a transfer which is avoidable under various provisions of the Bankruptcy Code, including 11 U.S.C. § 547, unless such entity or transferee has paid the amount, or turned over the property, for which such entity is liable under specified Bankruptcy Code Sections, including 11 U.S.C. § 550 (which provides for the trustee to recover the value of the property transferred).

(d) Notwithstanding subsections (a) and (b) of this section, the **court shall disallow any claim of any entity from which property is recoverable** under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under

21

section 522(f), 522(h), 544, 545, **547,** 548, 549, or 724(a) of this title, **unless such entity** or transferee has paid the amount, or **turned over any such property**, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502 (emphasis added). 11 U.S.C. § 502(d). Section 547 provides in part:

(b)Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), **avoid any transfer of an interest of the debtor in property**—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—
(A) **on or within 90 days** before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Transfers can be voluntary or involuntary, and include the obtaining of a lien on assets of the debtor. The term "Transfer" is defined in the Bankruptcy Code, 11 U.S.C. § 101(54), as:

(54) The term "transfer" means—

(A) the creation of a lien;

(B) the retention of title as a security interest;

(C) the foreclosure of a debtor's equity of redemption; or

(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—

1      (i) property; or

2      (ii) an interest in property.

3      The court must first determine whether Defendant is a transferee of a transfer avoidable

4 under § 547.  Section 547 states that the trustee may avoid a lien for the benefit of a creditor to

5 recover an antecedent debt filed while the debtor was insolvent within 90 days of the bankruptcy

6 filing and the creditor would receive more than they would received under a chapter 7 distribution.

7      Defendant states that the lien was perfected by the time Debtor filed its petition and it is

8 undisputed that the Notice of Lien was filed in the Dissolution Action on February 14, 2017, which

9 is within 90 days of Debtor's bankruptcy filing (April 14, 2017 being 59 days after the transfer).

10 Notice of Lien, attached to Proof of Claim 4-2 filed as Exhibit 16; Dckt. 19 at 110.

11      11 U.S.C. § 101(54)(A) defines the term transfer as meaning "the creation of a lien" and

12 11 U.S.C. § 101(54)(d) states that such a transfer also includes both "voluntary or involuntary or

13 disposing of or parting with property; or an interest in property." *See* 11 U.S.C. § 101(54).  The

14 Notice of Lien is a judgment lien that attaches to Debtor's property that is part of the Dissolution

15 Action.

16      The Bankruptcy Appellate Panel Decision, which is binding on Defendant and the Plaintiff-

17 Trustee, has determined that Defendant obtained and perfected its lien on assets of the Debtor by

18 filing the Notice of Lien in the Dissolution Action.  *Essex Bank v. Reger et al*, 2019 Bankr. LEXIS

19 3943, [*15], [*20].

20      Defendant received the transfer, the lien on "rights of the debtor to money or property"

21 through the Dissolution Action by filing on February 14, 2017, the Notice of Lien in the Dissolution

22 Action, which is within 90 days of the April 14, 2017 commencement of the Related Bankruptcy

23 Case by Debtor.  Thus, the lien, though a perfected security interest, having been obtained within

24 the 90 days prior to the commencement of the Related Bankruptcy Case subjects it to being avoided

25 under 11 U.S.C. § 547.

26      Next, having established that the lien was filed within 90 days and that it is to benefit the

27 creditor for purposes of an antecedent debt (the 2015 judgment entered against Debtor), the court

28 turns to whether the Debtor was insolvent.  The bankruptcy code provides that a debtor is presumed

23

1  insolvent for the period of 90 days before the filing of a bankruptcy case.  11 U.S.C. § 547(f).
2  Nothing to the contrary has been presented by Defendant.[10]

3      Finally, avoidance pursuant to § 547 requires that in order for the transfer to be avoidable
4  the transfer would allow creditor to receive more than creditor would receive in a chapter 7 case.
5  The 11 U.S.C. § 547(f) presumption of insolvency applies.

6      In this case, the facts show that with the unavoided lien Defendant asserts on assets of Debtor
7  through the Dissolution Action, it would recover more that they would if they had not obtained such
8  lien on all of Debtor's assets and held a "mere" unsecured claim.[11] The only asset of Debtor argued
9  to be outside of the lien is the $13,000.00 at issue in this Adversary Proceeding.  Further, the
10 determination of "insolvency" is a determination that "A debtor is generally considered to be
11 'insolvent' when the sum of its debts is greater than its property, at a fair valuation, exclusive of
12 fraudulently transferred property and exempt property." *Id.*

13     While in one breath, now four years into the Related Bankruptcy Case and having its lien
14 for more than four years, Defendant questions the value of its liens, it is resolute in retaining those
15 liens and enforcing them against Debtor and Debtor's assets.  Defendant's conduct is strong
16 evidence that the liens have significant value for Defendant and that Defendant is getting more than
17 if it had not obtained the lien within 90 days of the commencement of the bankruptcy case and had
18 "shared" all of the encumbered assets with the other creditors in the Related Bankruptcy Case.

19 _____

20  [10] While the presumption is rebuttable, "the creditor has the initial obligation to present
21  'some evidence' that the debtor was solvent at the time the transfer was made."  5 COLLIER ON
    BANKRUPTCY P 547.12 (16th 2020).

22  [11] The court notes that the proofs of claim filed in the Related Bankruptcy Case include:
23  $1,200,000.00 priority unsecured claim filed by Marie Landes (Debtor's separated spouse), POC
    7-1; $42,085.00 unsecured claim filed by American Express Bank, FSB, POC 6-1; $417,215.97
24  priority claim filed by the Internal Revenue Service, POC 3-1; $81,134.07 (secured $65,768.07
    and priority $15,366.00) filed by the California Franchise Tax Board, POC 1-1; $110,0491.64
25  general unsecured claim filed by Bank of Obtetourt, POC 8-1.

26     The only assets being administered by the Plaintiff-Trustee in the Related Bankruptcy
27  Case are the $13,000.00 in monies received for the Bankruptcy Estate's interest in the non-
    exempt equity in the vehicles, which Defendant asserts a lien against the right to such monies
28  ahead of the Bankruptcy Estate and all other creditors.

Defendant having received a voidable transfer, and that transfer not having been avoided, Defendant's claim in the Related Bankruptcy Case is disallowed. Amended Proof of Claim 4-2 filed by Defendant asserts that its $857,159.86 claim is fully secured, based on its various liens, including the Notice of Lien filed and interests in Debtor's property obtained within the 90 days of the commencement of the Related Bankruptcy Case.

Defendant can exercise its lien rights against all property of the Debtor in which it has a lien, the Plaintiff-Trustee choosing not to avoid it. No claim in the Related Bankruptcy Case is necessary for Defendant to retain its lien rights, including those obtained within the avoidable preference period specified in 11 U.S.C. § 547, in the Debtor's property and to enforce those outside of the bankruptcy court (after obtaining any relief from the stay that may be necessary).[12] But Defendant does not also get a claim to take other assets, if there were any, by asserting an unsecured claim in the Related Bankruptcy Case.

Defendant's claim pursuant to Amended Proof of Claim 4-1 is disallowed in the Related Bankruptcy Case.

**JL-1 Lien filed with the
California Department of State**

Creditor also argues that the funds at play are accounts receivable subject to the JL-1 lien filed with the California Department of State. The Bankruptcy Appellate Panel concluded that the JL-1 could not apply to the contract entered into by the Trustee to sell the property at issue in that motion to sell, stating the following:

> We also agree with the bankruptcy court that the JL-1 did not create a lien on the guns and artwork. In California, a JL-1 lien is similar to a UCC-1 lien and provides a judgment lien on a variety of personal property. *See* CCP § 697.530.5 Essex Bank argued at the sale hearing that the buy/sell agreement constituted an "accounts receivable" to William, which was covered by its JL-1 lien. The court disagreed, finding that the postpetition contract between Trustee on behalf of the bankruptcy estate and Marie was not a contract or receivable of William. And even if it was, the JL-1 lien did not encumber postpetition assets. § 552(a).

---

[12] Fed. R. Bankr. P. 3002(a), which includes, "A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim." *See also* discussion in 9 COLLIER ON BANKRUPTCY P 3002.01 [2] (16th 2020).

*Essex Bank v. Reger et al*, 2019 Bankr. LEXIS 3942, [15].

Defendant asserts that the $13,000.00 paid to the Plaintiff-Trustee by a check issued by Landes Medical Group (the Debtor's medial corporation) necessarily had to be an accounts receivable that was owed by the Landes Medical Group to the Debtor that was subject to the JL-1 lien. Defendant states that this JL-1 lien was filed with the Secretary of State, and thereby perfected, 101 days before Debtor filed his Related Bankruptcy Case (therefore, outside of the 90-day non-insider preference period).

While Defendant argues that the funds given to Plaintiff-Trustee are accounts receivable due to the Debtor, the "account receivable" itself was not transferred to the Plaintiff-Trustee. The issue then also may turn into whether Plaintiff-Trustee was a good faith transferee. The notice of sale for the sale of the vehicles was filed on May 18, 2017. Creditor Essex filed its original Proof of Claim 4-1 on July 17, 2017. At the time of the sale, an issue exists whether Plaintiff-Trustee had notice of a lien over Debtor's automobiles or accounts receivable. Moreover, Defendant did not oppose the sale, which would have given notice to Plaintiff-Trustee.

To the extent that Creditor Essex says this is an account receivable, this account receivable may be a post-petition asset subject to 11 U.S.C. § 552. Moreover, these funds are property acquired by the estate post-petition. Assets obtained by the bankruptcy estate post-petition are subject to 11 U.S.C. § 552. This is the same finding made by the Bankruptcy Appellate Panel in the Bankruptcy Appellate Panel Decision, discussed above, as it pertained to the funds paid by Marie Landes for the guns and artwork, where the Bankruptcy Appellate Panel held that a JL-1 did not encumber post-petition assets.

California Code of Civil Procedure section 680.130 states that "accounts receivable" means "account" as defined in paragraph (2) of subdivision (a) of Section 9102 of the Commercial Code. In turn, the California Uniform Commercial Code section 9102 defines account as:

> (2) "Account," except as used in "account for," means a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other

26

contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state. The term includes health care insurance receivables. The term does not include (i) rights to payment evidenced by chattel paper or an instrument, (ii) commercial tort claims, (iii) deposit accounts, (iv) investment property, (v) letter-of-credit rights or letters of credit, or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card.

Cal. Com. Code § 9102. The asserted accounts receivable here are purported to be accounts due from Landes Medical Group, the medical corporation owned by Debtor, to the Debtor.

In a professional corporation, it is possible that a member may be either given wages or a dividend. Thus, there is the possibility that the money received by the Plaintiff-Trustee through the check were Debtor's wages. It could also be a bonus. It could be a profit distribution. A JL-1 is not the correct instrument to have a lien on wages. Commercial Code section 9102 does not include wages, bonuses, or profit distributions/dividend. Possibly it could have been a payment due Debtor as of the commencement of the Related Bankruptcy Case and already had become an asset of the Bankruptcy Estate.[13]

To the extent that the monies were owed to the Debtor as part of his earnings from working at Landes Medical Group, California Code of Civil Procedure 706.020 provides for the garnishing of wages earned by an employee and it requires an order from the court for said wage garnishment:

> Except for an earning assignment order for support, the earnings of an employee shall not be required to be withheld by an employer for payment of a debt by means of any judicial procedure other than pursuant to this chapter.

Cal. Civ. Proc. Code § 706.020. Defendant does not assert having a wage garnishment order for Debtor's wages.

Additionally, the term "earnings" is defined in California Code of Civil Procedure § 706.011(b) to be:

---

[13] The Plaintiff-Trustee has testified that he heard the Debtor say that the $13,000.00 paid to the Plaintiff-Trustee for the Bankruptcy Estate's non-exempt interests in the vehicles was obtained by the Landes Medical Group through a loan. At this point in time no other evidence of that contention has been provided, such as bank or other lender loan information, only what the Plaintiff-Trustee says he heard the Debtor say.

27

1    § 706.011. Definitions

2    As used in this chapter:
     . . .
3    (a) "Disposable earnings" means the portion of an individual's earnings that remains
     after deducting all amounts required to be withheld by law.

4
     (b) "Earnings" means compensation payable by an employer to an employee for
5    personal services performed by such employee, whether denominated as wages,
     salary, commission, bonus, or otherwise.

6

7         As discussed in the Rutter Group California Practice Guide: Enforcing Judgments and Debts,

8    CH 6F-5, when a judgment creditor seeks to reach "earnings," at least seventy-five percent (75%)

9    are automatically exempt from garnishment.  Cal. C.C.P. § 706.050.

10        But if Debtor was not paid that as an "employee," but it was a passthrough of his earnings

11   for medical services provided patients, then it could appear not to be an "account receivable" owed

12   by the Professional Corporation, but had been an account receivable owed by patients and their

13   insurance carriers to the Debtor, who disbursed those obligations to Debtor through the Professional

14   Corporation.

15        California law also expressly addresses the situation where an obligor on an account

16   receivable makes payment on an account receivable:

17        (f) Notwithstanding the filing of a notice of judgment lien, subject to the provisions
          of Chapter 6 (commencing with Section 708.010), a person obligated on an account
18        receivable or chattel paper is authorized to pay or compromise the amount without
          notice to or consent of the judgment creditor unless and until there is a levy pursuant
19        to Chapter 3 (commencing with Section 699.010).

20   Cal Code Civ Proc § 697.530(f).  The Chapter 6 referenced is to the Miscellaneous Creditors'

21   Remedies, California Code of Civil Procedure §§ 708.010 - 709.030; and Chapter 3 relates to the

22   affirmative action and rights of a creditor to enforce a judgment and obtain possession of assets of

23   the judgment debtor to apply to the judgment obligation.  There is no levy asserted to have occurred

24   and no other act than the filing of the JL-1, the Notice of Judgment Lien (discussed below) to create

25   and perfect the asserted judgment lien on accounts receivable of the Debtor.

26        These issues as to what the $13,000.00 represents, whether it is subject to a lien of Defendant

27   and whether the Defendant has the right to demand delivery of its collateral, or whether it is

28   unencumbered money for the Plaintiff-Trustee to administer through the Related Bankruptcy Case,

1   will be adjudicated by Plaintiff-Trustee and Defendant through the First Cause of Action in the

2   Complaint.

3
    **Appeal of an Order Granting**
4   **Partial Summary Judgment**

5           At the hearing on the Motion for Summary Judgment, counsel for Defendant requested the

6   court delay entry of the order granting it as to the objection to claim based on 11 U.S.C. § 502(d).

7   If the order was entered, counsel indicated that Defendant was likely to immediately appeal that

8   order.

9           The court discussed with the attorney for Defendant and attorney for the Plaintiff-Trustee

10  the effect of a disallowance of claim under 11 U.S.C. § 502(d), which is not an adjudication of the

11  underlying debt, and Defendant continuing to have its lien rights and the ability to enforce them,

12  including the determination thereof through the First Cause of Action in the Complaint.

13          Additionally, the court addressed with the respective attorneys that only partial summary

14  judgment was being granted on the Third Cause of Action, the 11 U.S.C. § 506(d) objection to

15  claim, and that the "main event," determination of the extent, validity, and amount of Defendant's

16  asserted lien,  still remained to be adjudicated between the Plaintiff-Trustee and Defendant in the

17  remaining First Cause of Action.  Such a partial summary judgment is not a final decision from

18  which an appeal may be taken.

19          [2] Partial Summary Judgement Is Not Usually Appealable

20          [a] Partial Summary Judgment Is Interlocutory Order, Not Subject to Immediate
            Appeal
21
            Partial summary judgments ordinarily do not dispose of an entire case (see § 56.122).
22          Therefore, they are considered interlocutory decisions rather than final decisions. As
            interlocutory decisions, they are not ordinarily subject to appeal (see Ch. 203,
23          Interlocutory Orders ). However, there are a number of exceptions to the general ban
            on appeal of interlocutory orders (see [4], below).
24
            A partial summary judgment, interlocutory and unappealable, may become a final
25          judgment subject to appeal if the parts of the case that were not resolved in the partial
            summary judgment are otherwise resolved. For example, if a district court grants
26          summary judgment on all federal claims and remands all remaining state-law claims,
            the partial summary judgment is an appealable final order, even in the absence of a
27          Rule 54(b) certification (see [b], below), because there is nothing left for the district
            court to resolve.
28

11 Moore's Federal Practice - Civil § 56.130 (2021). The footnote citations to the above quotation include *Jones v. McDaniel*, 717 F.3d 1062, 1068 (9th Cir. 2013), which states:

> Orders granting partial summary judgment "are not final appealable orders." *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074 (9th Cir. 1994) (internal quotation marks omitted). "As a result, parties ordinarily must obtain Rule 54(b) certification in order to appeal partial summary judgments." *Id.; see* Fed. R. Civ. P. 54(b). Absent such certification, "[a] ruling on a motion for partial summary judgment merges with the final judgment." *Adkins v. Mireles*, 526 F.3d 531, 538 (9th Cir. 2008); see also 15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3914.28 (2d ed. 1991 & 2008 Supp.).

This court has not, and is not, pursuant to Federal Rule of Civil Procedure 54(b) and Federal Rule of Bankruptcy Procedure 7054 entered a final judgment on the Summary Judgment Motion matters, but will issue only one final judgment in this Adversary Proceeding after the final cause of action, the First Cause of Action to determine Defendant's rights and interests in the $13,000.00, has been adjudicated in this trial court.

As with the discussion of applicable California and Federal law to the claims, issues, rights, and defenses asserted, the court includes this discussion of appeals from partial summary judgment orders to not only demonstrate that the court's comments at oral argument were accurate, but to ensure that the parties and their counsel are focused on the applicable law.

The court shall issue a separate order granting partial summary judgment for Plaintiff-Trustee on the Third Cause of Action, disallowing pursuant to 11 U.S.C. § 502(d) Defendant's Claim, Proof of Claim No. 4-2. Judgment disallowing the claim shall be entered as part of one final judgment in this Adversary Proceeding.

The Order shall expressly state that the disallowance of the claim pursuant to 11 U.S.C. § 502(d) is not a determination of Defendant's lien rights in the $13,000.00, and such will be determined through the adjudication of the First Cause of Action and judgment on the First Cause of Action .

**Dated:** April 01, 2021                    **By the Court**

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*.  The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor** | **Attorney for the Debtor** |
|---|---|
| William A. Landes<br>2485 Norte Dame Blvd., #230<br>Chico, CA 95928 | Douglas B. Jacobs, Esq.<br>20 Independence Circle<br>Chico, CA 95973 |
| **Plaintiff / Bankruptcy Trustee**<br><br>John W. Reger<br>1707 El Capitan Drive<br>Redding, CA 96001 | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Plaintiff / Bankruptcy Trustee**<br><br>Michael P. Dacquisto, Esq.<br>P.O. Box 493310<br>Redding, CA 96049 | **Attorney for the Defendant**<br><br>Stephen G. Opperwall, Esq.<br>4900 Hopyard Road, #100<br>Pleasanton, CA 94588 |